UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LOUIS OLIWA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : 3:06-cv-00719 (WWE) |
| | : |
| LATEX INTERNATIONAL, | : |
| | : |
| Defendant. | : |

**RULING ON MOTION TO DISMISS**

This action arises from plaintiff Louis Oliwa's allegations that defendant Latex International ("Latex") violated plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 623, et seq. ("ADEA"), and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, et seq. ("CFEPA"). Plaintiff also alleges that Latex retaliated against him in violation of the ADEA and the CFEPA because he opposed Latex's discriminatory conduct and that he suffered emotional distress intentionally inflicted by Latex. Latex has moved to dismiss plaintiff's complaint in its entirety because plaintiff has failed to set forth claims upon which relief can be granted; that plaintiff fails to allege any adverse employment action; that plaintiff failed to exhaust his administrative remedies by bringing his claims before the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunities Commission ("EEOC"); and that plaintiff's allegations do not satisfy the

1

legal requirement for intentional infliction of emotional distress.

## BACKGROUND

Plaintiff has been employed by Latex since November 1979. Plaintiff alleges that up until the time relevant to this cause of action, his performance was satisfactory and met all of defendant's expectations. He claims that he had never received any complaints about his performance.

Plaintiff asserts that prior to October 2004, his immediate supervisor was Christopher Miller, approximately twenty years plaintiff's junior. Since October 2004, his immediate supervisor has been Anthony Mancini, who is also approximately twenty years younger than plaintiff.

In January 2004 he was given the title of "Senior Supervisor"[1] but was not given a pay raise until July 2004. He claims this salary increase was in recognition of his alleged "above average performance." He also asserts that he was told that he was given this promotion because he was the "old man on the block."

Beginning in January 2005, plaintiff claims, defendant began a practice of discrimination against plaintiff because of his age and tenure. This alleged practice began with Mancini, plaintiff's supervisor, requesting an updated attendance log and placing plaintiff on a "Performance Improvement Plan" and probation because of plaintiff's failure to discipline employees for tardiness. Plaintiff claims that the other supervisors – all younger than plaintiff – were not recording their attendance data and

---

[1] In his CHRO complaint, plaintiff alleges that this title change occurred in September 2004. For the sake of clarity, the Court will refer to the date asserted in the complaint before this Court as the date of the plaintiff's promotion.

that such data was falsified, but that they were not disciplined.

Plaintiff also alleges that he was erroneously disciplined for having not completed a job assignment by a specified date when, in fact, plaintiff claims he had completed the task as requested. Mancini issued a "write-up" for not having completed this assignment. He did not provide plaintiff with a warning as to such action.

Additionally, plaintiff claims that based on the unlawful consideration of his age, he was the only supervisor who received a mid-year evaluation and who was told that his performance was lacking. He asserts that he was never informed as to what was lacking in his performance nor was he provided with any suggestions for improvement.

In further support of his allegation that he was discriminated against, plaintiff cites Mancini's alleged comments that "I wish I could make as much money as Louis makes working 42 hours per week" and "if I got rid of you, I could hire a Supervisor and trainer for the salary" plaintiff was making. Plaintiff also claims that Mancini would publicly embarrass him by yelling at plaintiff when other employees could hear. Mancini also allegedly informed plaintiff on May 12, 2005 that plaintiff was expected to assume the additional responsibilities of "trainer" of new and current employees. This training was to take place on plaintiff's days off. Plaintiff claims that he was told he had two weeks in which to decide if he would accept this assignment or he would be demoted or would receive a decrease in pay. Plaintiff claims that these acts were all part of a plan to "get rid of" him.

Plaintiff formally complained to his supervisor and the Department of Human Resources that he was being discriminated against based on his age. On July 5, 2005, plaintiff filed a complaint with the CHRO, alleging this discrimination. In retaliation,

3

plaintiff alleges, Mancini manufactured inaccurate production numbers in order to establish plaintiff's performance as lacking. On September 19, 2005, plaintiff sent a letter to Peggy Freeman, Vice President of Human Resources, informing her that since the filing of his CHRO complaint, his employment conditions had worsened. No action was taken to remedy the situation. Plaintiff filed this action in May 2006.

## DISCUSSION

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The function of a motion to dismiss "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the non-moving party. Cruz v. Beto, 405 U.S. 319, 322 (1972).

**I.      Age Discrimination Claim**

Defendant urges dismissal of this action, arguing that plaintiff has not properly pleaded the elements of his prima facie Title VII case. The Second Circuit, following Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002), recently confirmed that a plaintiff need not establish a prima facie case of discrimination in the complaint in order to survive a motion to dismiss. Leibowitz v. Cornell University, 445 F.3d 586, 591-92 (2d Cir. 2006). The Title VII prima facie case is an evidentiary standard, not a pleading

requirement.  Swierkiewicz, 534 U.S. at 510.  In this instance, plaintiff's allegation that he experienced discriminatory animus because of his age sufficiently satisfied the notice pleading standard of Federal Rule of Civil Procedure 8(a).  The motion to dismiss will be denied on this basis.

**II.    Retaliation**

   a)    Unexhausted Administrative Remedies

Defendant requests the Court to dismiss plaintiff's claim of retaliation based on his failure to exhaust his administrative remedies.  Specifically, defendant complains that plaintiff's claim must fail because he did not bring his claim of retaliation before the CHRO or the EEOC.

To sustain a claim for unlawful discrimination under Title VII, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts.  Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000); 29 U.S.C. § 626(d)(2) (establishing 300-day time bar for ADEA claims).  However, "an employer performs a separate employment practice each time it takes adverse action against an employee, even if that action is simply a periodic implementation of an adverse decision previously made."  Elmenayer v. ABF Freight System, Inc., 318 F.3d 130, 134 (2d Cir. 2003).

A court should consider only those allegations that were either included in the original charge of discrimination or that occurred subsequent to that charge.  Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir.1992).  The Second Circuit has "recognized three kinds of situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge": 1) where

the complained of conduct is within the scope of the administrative investigation which could reasonably be expected to grow out of the charge of discrimination; 2) where the alleged conduct would constitute retaliation for filing a timely EEOC charge; or 3) where the alleged conduct constitutes further incidents of discrimination perpetrated in precisely the same manner as that alleged in the EEOC charge.  Butts, 990 F.2d at 1402-03.

Plaintiff argues that his allegations of retaliation fall under the second exception articulated in Butts.  Because he claims that he was further discriminated against in retaliation for his filing of the CHRO complaint, he did not include such allegations in the CHRO complaint.  This does not obviate his claim. The Second Circuit has held that a claim alleging retaliation for the filing of the CHRO or EEOC claim is reasonably related to the allegations contained in the earlier CHRO or EEOC filing and "may thus be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC." Owens v. New York City Housing Authority, 934 F.2d 405, 410 - 11 (2d Cir. 1991).  The motion to dismiss will be denied on this ground.

    b)    Essential Elements of Retaliation

Defendant also claims that plaintiff has failed to allege the prima facie elements of a retaliation claim pursuant to Title VII, namely, that he has not alleged an adverse employment action sufficient to support his claim.

Consistent with Leibowitz, the Court will not require plaintiff to establish the prima facie elements of his retaliation claim in his complaint.  Plaintiff has given defendant adequate notice of the nature of his claim.  The Court will leave him to his proof on summary judgment.

### III. Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress, plaintiff must establish: 1) that defendant intended to inflict emotional distress, or it knew or should have known that emotional distress was the likely result of its conduct; 2) that defendant's conduct was extreme or outrageous; 3) that defendant's conduct was the cause of plaintiff's emotional distress; and 4) that the emotional distress suffered by plaintiff was severe.  Golnik v. Amato, 299 F.Supp.2d 8, 14 -15 (D.Conn. 2003) (dismissing claim of intentional infliction of emotional distress).

In order to assert a viable claim, plaintiff must allege conduct that "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Appleton v. Board of Education, 254 Conn 205, 210-11 (2000).  "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress."  Id. at 211.  See Boenig v. Potter, 2005 WL 736822, * 6 (D.Conn.) (dismissing claim of intentional emotional distress pursuant to Appleton standard).

In the present case, plaintiff alleges that defendant intentionally inflicted emotional distress in that it, inter alia, : subjected plaintiff to public ridicule; made him fear the loss of his employment; issued performance reviews; placed plaintiff on a performance improvement plan and probation; and made remarks allegedly in reference to his age.  None of these allegations attain the level of extreme or outrageous conduct.  The Court will grant defendant's motion to dismiss count five of

7

plaintiff's complaint.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss [doc. # 7] is DENIED in part and GRANTED in part.  The Court DENIES defendant's motion to dismiss Counts One (violation of the ADEA, age discrimination), Two (violation of the ADEA, retaliation), Three (violation of CFEPA, age discrimination) and Four (violation of CFEPA, retaliation) and GRANTS defendant's motion to dismiss Count Five (intentional infliction of emotional distress).  Plaintiff is instructed to file an amended complaint consistent with this ruling within five days of this ruling's filing date.

SO ORDERED this 29th day of January, 2007 at Bridgeport, Connecticut.

_____/s/_____

Warren W. Eginton
Senior U.S. District Judge